UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
                                                                     :
UNITED STATES OF AMERICA ex rel. DEREK LYON,                         :      04-CV-4119 (ARR)(RLM)
TINA CROWLEY, JESSICA COLON and ANNE MARIE                           :
BELLATTO,                                                            :      **TO BE FILED**
                                                                     :      **UNDER SEAL**
                              Plaintiffs,                            :
                                                                     :      OPINION & ORDER
        -against-                                                    :
                                                                     :
AMERICAN MEDICAL RESPONSE, LAIDLAW                                   :
INTERNATIONAL INC., PARK AMBULANCE SVC,                              :
ASSOCIATED AMBULANCE SERVICE, INC. and PHIL                          :
CRIMALDI,                                                            :
                                                                     :
                              Defendants.                            :
------------------------------------------------------------------- X

ROSS, United States District Judge:

        Anne Marie Ballato ('Ballato') and three others bring this action pursuant to the False

Claims Act ('FCA'), 31 U.S.C. §§ 3729-3733.[1]  Now before the court is the government's motion

to dismiss Ballato's qui tam claims on the basis of her misconduct in divulging and offering to

sell sealed information about the case.[2]  Ballato has failed to respond in opposition to the

government's motion.  Because the court finds that Ballato's actions have incurably frustrated the

statutory purposes behind the FCA qui tam sealing provision, it grants the government's motion.

## BACKGROUND

        On September 22, 2004, Ballato and three other relators filed this action against

defendants American Medical Response ('AMR'), its subsidiaries, a former parent corporation,

and an individual employee, Phil Crimaldi ('Crimaldi').  By the complaint, which was properly

---

[1] Alternate spellings of this relator's name appear in the case documents.  For the purpose of this Opinion and Order, the court adopts the spelling in the government's moving papers.

[2] The government's motion to dismiss does not address Ballato's retaliation claims under 31 U.S.C. § 3730(h).  Accordingly, they are beyond the scope of this Opinion and Order.

filed under seal and served on the government, see 31 U.S.C. § 3730(b)(2), they allege that defendants have violated the FCA by engaging in various schemes to submit falsely inflated claims for ambulance services to the Medicare program for reimbursement.

After receiving the complaint, the government served a subpoena on AMR and engaged its counsel in settlement discussions. Declaration of Erin E. Argo, Nov. 17, 2010 ('Argo Decl.') ¶ 3. For the purpose of these discussions, the government sought and received a court order allowing it to disclose, at its discretion, the existence and allegations of the qui tam complaint. Id. ¶ 4. The government subsequently provided AMR with a redacted version of the complaint, in which the identities of the four relators were not disclosed. Id. ¶ 5. The seal was also partially lifted to allow the government to disclose information to state officials with health oversight responsibility. Id. ¶ 6. Otherwise the complaint remains under seal.

On or about June 3, 2008, Ms. Ballato contacted AMR employee Jesus Vasquez ('Vasquez'). Declaration of Jesus Vasquez, Oct. 7, 2010 ('Vasquez Decl.') ¶ 3. By text message, Ballato asked whether Vasquez thought Crimaldi would pay for information. Id. In a phone conversation with Vasquez later that day, Ballato revealed that she and three other individuals had brought the qui tam action. Id. ¶ 4. She told Vasquez the names of two of the other relators and represented that she had further information about the complaint and the government's investigation; she offered to sell this information to Crimaldi. Id. ¶¶ 4-5.

Vasquez relayed the contents of this conversation to Crimaldi. Id. ¶ 6. Vasquez then met with an agent of the Health and Human Services Office of Inspector General, who provided him with a recording device, and he cooperated with that office's investigation by recording several calls between himself and Ballato. Id. ¶¶ 8-9. During a call on July 1, 2008, Ballato told Vasquez that the identity of the fourth relator would shock Crimaldi, and she eventually revealed

2

facts about that individual. Id. ¶ 10. Ballato also gave the names of witnesses she said were interviewed by the government about the case. Id. Vasquez told Ballato that he would not approach Crimaldi until she had a plan for the exchange of money and information. Id. ¶ 11. Ballato agreed, but she and Vasquez did not subsequently discuss the logistics of selling information to Crimaldi. Id. ¶ 12. Finally, during a call on November 17, 2008, Ballato indicated that she would not pursue selling information to Crimaldi because, she said, AMR was aware of the investigation and Crimaldi would have to know of it, too. Id. at 14.

## DISCUSSION

The FCA requires qui tam complaints to be filed under seal and served initially on the government rather than on the defendants:

> A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

31 U.S.C. § 3730(b)(2); see also § 3730(b)(3) (seal may be extended for good cause shown). Failure to comply with these service and filing requirements may result in a relator's dismissal. See generally United States ex rel. Pilon v. Martin Marietta Corp., 60 F.3d 995 (2d Cir. 1995). Although the complaint in this action was served on the government and filed under seal in compliance with the FCA requirements, the government argues that Ballato's subsequent willful violation of the seal warrants the dismissal of her qui tam claims. The court agrees.

The government has not cited, and the court has not found, any reported decisions in which the government sought to dismiss a relator for misconduct similar to Ballato's actions here, but there is no paucity of authority recognizing that a relator may be dismissed, on the motion of

a defendant, for failure to comply with the FCA qui tam service and filing requirements. The

leading Second Circuit case in this area is United States ex rel. Pilon v. Martin Marietta

Corporation, 60 F.3d 995. The Pilons, relators in that case, failed to serve the government, failed

to arrange for the complaint to be filed under seal, and then gave an interview to the press about

the allegations in the complaint. Id. at 997-98. The Second Circuit found that the Pilons and

their counsel thereby exhibited "a considerable lack of good faith" with respect to these

requirements. Id. at 999. Finding that "failure to comply with the service and filing requirements

incurably frustrates" the interests behind those provisions, the Second Circuit held that the Pilons'

qui tam claims must be dismissed with prejudice. Id. at 999, 1000.

    In reaching this conclusion, the Second Circuit examined the legislative history

surrounding the 1986 amendments to the FCA that created the service and filing requirements of

Section 3730(b)(2) and identified the interests behind these provisions. The overall

congressional purpose in amending the qui tam section of the FCA, it found, was to encourage

more private enforcement suits. Id. at 998. The "sealing period, in conjunction with the

requirement that the government, but not the defendants, be served, was 'intended to allow the

Government an adequate opportunity to fully evaluate the private enforcement suit and

determine both if that suit involves matters the Government is already investigating and whether

it is in the Government's interest to intervene and take over the civil action." Id. at 998-99

(quoting S. Rep. No. 345, 99th Cong., 2d Sess. 24, reprinted in 1986 U.S.C.C.A.N. 5266, 5289).

Among other interests, the Second Circuit also noted the government's settlement interest in the

sealing provision: "when a potentially meritorious complaint is filed, a defendant may be willing

to reach a speedy and valuable settlement with the government in order to avoid the unsealing."

Id. at 999. Given the existence of such non-investigative interests, the Second Circuit observed,

"That the government and Defendants may have been aware of the substance of the Pilons' allegations does not diminish the consequences of the Pilons' failure to comply with the statutory requirements." Id.

Pilon compels the dismissal with prejudice of FCA qui tam claims when the relator fails to comply with the filing and service requirements of Section 3730(b)(2) because this failure incurably frustrates the interests behind these provisions. See United States ex rel. Stevens v. Vermont Agency of Natural Resources, 162 F.3d 195, 200 (2d Cir. 1998) ("Failure to comply with these mandatory threshold requirements warrants dismissal of the qui tam complaint with prejudice . . . ") (citing Pilon, 60 F.3d at 998-99), rev'd on other grounds, 529 U.S. 765 (2000); United States ex rel. Le Blanc v. ITT Indus., Inc., 492 F. Supp. 2d 303, 305 (S.D.N.Y. 2007). It does not, however, establish a per se rule of dismissal for every violation of the FCA qui tam sealing provision. See United States ex rel. Summers v. LHC Group, Inc., 623 F.3d 287, 300 (6th Cir. 2010) (Keith, J., concurring) (contrasting the Second Circuit's approach with the Sixth Circuit's per se rule of dismissal). Lesser violations of this provision that do not so frustrate the statutory purpose—for instance, premature service of the complaint in violation of the seal but after the government has decided not to intervene—do not warrant automatic dismissal. See United States ex. Rel. Bogart v. King Pharm., 414 F. Supp. 2d 540, 545 (E.D. Pa. 2006) (citing United States ex rel. Kusner v. Osteopathic Med. Ctr. Of Phila., No. Civ. A. 88-9753, 1996 WL 287259, at *5 (E.D. Pa. May 30, 1996).

The court finds that Ballato's misconduct incurably frustrates the interests behind the sealing provision and, indeed, the overarching purpose of the FCA qui tam right of action. The congressional aim in authorizing qui tam actions was to promote enforcement of the FCA, not to enrich those with information about the abuse of federal contracts. See Summers, 623 F.3d at

291-92. The sealing provision of Section 3730(b)(2) is designed to facilitate government oversight of these private enforcement actions so that it can ensure effective enforcement of the FCA. See Pilon, 60 F.3d at 998-99. By breaking the seal in this action and attempting to sell information about the government's investigation, Ballato deliberately sabotaged enforcement of the FCA in pursuit of personal gain. Accordingly, her qui tam claims must be dismissed.

Further support for this conclusion may be found in the Ninth Circuit's reasoning in United States ex rel. Lujan v. Hughes Aircraft Co., in which it addressed whether a post-filing violation of the FCA qui tam sealing provision required dismissal. See 67 F.3d 242 (9th Cir. 1995). The relator in that case, Linda Lujan, properly filed her complaint under seal and served it on the government, but then she apparently made statements to the press about the existence and nature of the qui tam action. The Ninth Circuit held that the appropriateness of dismissal should be determined by balancing three factors: (1) whether the government was actually harmed by the disclosure, (2) the nature and relative severity of the violation, and (3) the presence or absence of bad faith or willfulness on the part of the relator. See id. at 245-47.

Although the Second Circuit has not adopted a balancing test, see Le Blanc, 492 F. Supp. 2d at 308 n.2, the Lujan factors provide an analytical framework for considering whether Ballato's violation of the seal in this case "incurably frustrates" the congressional purposes behind the FCA qui tam machinery. Taking these factors in reverse order, Ballato's bad faith is obvious in her willful attempt to profit from the violation. The violation is severe in nature because Ballato's actions were calculated to compromise the government's fraud investigation, a primary interest to be protected by seal. Whether Ballato's actions actually had the effect of compromising the government's investigation and thereby harming the government is unknowable but not determinative. Her disclosures may have caused harm if Crimaldi or AMR

6

acted on the information to guard against the government's investigation. The information may also have affected defendants' estimation of the settlement value of the case, thereby harming the government's non-investigative interest in its settlement negotiations. In any event, the leaden weight of Ballato's willful and severe violation of the FCA seal in an attempt to gain at the expense of the government would easily outbalance the lack of demonstrated harm.

## CONCLUSION

For the reasons set forth above, the court finds that Anne Marie Ballato's willful violation of the FCA qui tam sealing provision incurably frustrates its purposes. Her qui tam claims are therefore dismissed with prejudice.

SO ORDERED.

s/ ARR

Allyne R. Ross
United States District Judge

Dated:        January 18, 2011
              Brooklyn, New York

## Service List

Pro Se Relator
Anne Marie Ballato
60 Forge Lane
Levittown, NY 11756


Attorney for United States
Erin E. Argo
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201


cc:    Magistrate Judge Roanne L. Mann